### LEWIS v. ORNSTEIN et al.

(Circuit Court of Appeals, Second Circuit. May 21, 1926.)

No. 320.

1. **Bankruptcy ⬤161(1)—Conveyance made pursuant to trust obligation or by way of preferential payment to creditor is valid, if made more than four months before bankruptcy.**

Conveyance made more than four months before bankruptcy is entirely valid as against creditors, if made pursuant to a trust obligation or by way of preferential payment to creditor.

2. **Fraudulent conveyances ⬤57(4)—Under New York law, gifts by one entirely solvent, not intended to defraud, are, on later insolvency, free from attack, even by those whose claims arose prior to gift.**

Under New York law, gifts by one entirely solvent, engaged in going profitable business, and not made with actual intent to defraud creditors, are, in case of later insolvency, free from attack, even by those whose claims arose prior to gift.

3. **Husband and wife ⬤49¾(6)—Failure of wife to demand husband's return of money intrusted to him for purchase of house, on deal falling through, held not to show intent to give money to him.**

Where wife intrusted husband with money for purpose of purchasing a home, her failure to demand money back when deal for purchase fell through did not evidence an intent to make gift to him, in view of her nervous condition at such time and her confidence in her husband.

4. **Husband and wife ⬤49¾(6)—Husband's check book and ledger entries were not admissible, against wife, to show her intent to give to husband money intrusted to him for purchase of home, and used for business on deal falling through.**

Where wife had intrusted money to husband for purchase of home, and on failure of deal to go through husband had used money in his business, husband's check book and ledger entries were not admissible, as against wife, for purpose of showing intent to make a gift of money to husband.

5. **Bankruptcy ⬤172—Deed from husband to wife more than four months before bankruptcy was free from attack by trustee, where equity was of less value than sum intrusted by wife to husband.**

Where equity in property deeded by husband to wife more than four months before bankruptcy was worth less than sum paid by wife to husband some time previously for purchase of home and used in his business, the deed to wife, either as creditor of husband or as cestui que trust, was free from attack by trustee in bankruptcy.

Hough, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern District of New York.

Action by Oscar A. Lewis, as trustee in bankruptcy of Arthur Ornstein, against Lillie Ornstein and another. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions.

David W. Kahn, of New York City, for appellants.

Stein & Salant, of New York City (Eli S. Wolbarst, of New York City, of counsel), for respondent.

Before ROGERS, HOUGH, and MACK, Circuit Judges.

. MACK, Circuit Judge. Bankrupt, Arthur Ornstein, was in business under the name of Oriental Bead Company. In 1919 he incurred an obligation for goods to be handled for the joint account of the vendor and himself, an obligation that, despite his denials of liability, eventuated in 1922 in a judgment against him for over $50,000.

Frequently during marriage he gave moneys to his wife, Lillie; during 1919, while he was solvent and doing a prosperous business, these aggregated over $16,000. She deposited them in several savings banks in her own name, except that one account was in her name as trustee for their children.

In March, 1920, she drew $11,400 out of these accounts and gave the money to her husband, to pay for a house that he was buying for her. The seller, however, declined to consummate the deal. The money went into his business. In the check book stub showing deposits, it appeared as "Loan A. O." In the ledger, it was credited under the account of "L. Ornstein." The earlier entries in this account, which at the time showed a debit balance, were debits and credits of a brother, Leo Ornstein.

In November, 1920, the equity in the property now in question was bought for $12,500;

title was taken in Arthur Ornstein's name. During 1920 and 1921 the wife was in a serious nervous condition, and left all matters connected with the deals for the houses to her husband.

In June, 1921, the deed from the bankrupt to his wife, now sought to be annulled as in fraud of creditors, was executed for a nominal consideration; it was recorded in August, 1921. He knew in June, 1921, that a judgment against him was probable, and in August that it would be entered within a few days. The bankruptcy in 1922 was precipitated by this judgment on the obligation that arose out of the 1919 transactions.

In May, 1921, bankrupt gave his bank a statement of his condition as of January 1, 1921; in this he included the equity in the house among his assets, and did not include any indebtedness to the wife among his liabilities.

[1] 1. As the conveyance was made more than four months before bankruptcy, it is entirely valid as against creditors, if made pursuant to a trust obligation, or by way of preferential payment to a creditor.

[2] 2. The law of New York, as of most of the states, is well settled that gifts by one entirely solvent, engaged in a going profitable business, and not made with actual intent to defraud present or subsequent creditors, are, in case of later insolvency, free from attack even by those whose claims arose prior to the gift. 27 C. J. 547 to 555, §§ 247 to 257.

The primary question, therefore, is whether the payments in 1919 were gifts or mere subterfuges to conceal funds intended to remain the property of the husband. We find nothing in this record to contradict the testimony of both husband and wife that an actual gift was intended, unless the repayment in 1920 be deemed sufficient to indicate an original intent that it should always remain the husband's property. A majority of the court are of the opinion that the repayment cannot be so interpreted.

3. What, then, was the effect of the repayment in March, 1920? Of course, if the 1919 payments to the wife were but a concealment of the husband's money, the repayment could give her no rights therein or to the property purchased therewith; the deed of 1921 from the insolvent husband would then be without consideration, and therefore annullable in this suit by the trustee in bankruptcy as a conveyance to hinder and delay creditors.

Even if the 1919 payments were gifts, a like result would follow, if the 1920 repayments were return gifts by wife to husband. But clearly, on this record, such an intent by either or both cannot be found; there is nothing to contradict the testimony that the repayments were made solely to enable him to buy for her the home that they were negotiating for.

[3, 4] While she knew that that deal had fallen through, and that her husband had not repaid her the money, nevertheless her failure to demand it back, especially in view of her then condition, her confidence in him, and the success that he had made in business, cannot be deemed to evidence a then intent to make a gift of the money to him. The check book and ledger entries were not admissible as against the wife; she never saw, knew of, or authorized them.

While the check book memorandum, especially in the light of his later bank statement, might evidence Ornstein's intent to take the money as his own, clearly the ledger entry, false though it be if indicative of a loan by Leo instead of by Lillie Ornstein, does not evidence a gift by the wife. Furthermore, as business men customarily look upon a business conducted under a corporate name as an entity distinct from the owner, the check book memo, "Loaned by A. O.," fairly evidences, even as against the husband, only that he was lending this money to the business; it indicates nothing, however, as to whether the relation of husband to wife, resulting from the payment of the money by her to him, was that of donee, trustee, or debtor.

[5] As in our judgment he was not a donee, it is unnecessary to determine whether, with or without her consent, he became a debtor or a trustee of the funds, or whether, if a trustee of the money, he later became trustee of the home, under a resulting or constructive trust. Concededly, at the time of suit and continuously since then, the equity was worth less than the $11,400 paid over by the wife in 1920. Therefore the deed to her, either as creditor or as cestui que trust, is free from attack by the trustee in bankruptcy.

In the judgment of the majority of the court, the decree must be reversed, and the cause remanded, with directions to enter a decree dismissing the bill for want of equity.

HOUGH, Circuit Judge. I disagree with no legal principle stated by the majority opinion. I dissent from the result, because I cannot view the facts as do my brethren.